**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| **SAMUEL SPAN, (R12605),** ) | |
| **Plaintiff,** ) | **Case No. 15 C 50063** |
| ) | |
| **v.** ) | |
| ) | **Judge Philip G. Reinhard** |
| **DONALD ENLOE, Acting Warden of** ) | |
| **Dixon Correctional Center, RANDY** ) | **Mag. Judge Iain D. Johnston** |
| **PFISTER, Warden of Pontiac Correctional** ) | |
| **Center, JAMIE CHESS, JOANNA** ) | |
| **KEMMEREN, RAPHAEL CHAVEZ,** ) | **JURY TRIAL DEMANDED** |
| **CURT EUBANKS, SHEILA STONE,** ) | |
| **LISA SCHOENBERGER, PATRICIA** ) | |
| **VICKROY, JOSHUA ANDREWS,** ) | |
| **TRENT HANRAHAN, and JOHN or** ) | |
| **JANE DOES,** ) | |
| **Defendants.** ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Samuel Span (R12605) hereby brings this action for damages and declaratory and injunctive relief, against Defendants Donald Enloe, Acting Warden of Dixon Correctional Center, Randy Pfister, Warden of Pontiac Correctional Center, Curt Eubanks, Sheila Stone, Jamie Chess, Patricia Vickroy, Joanna Kemmeren, Raphael Chavez, Lisa Schoenberger, Correctional Officer Joshua Andrews, Correctional Officer Trent Hanrahan, and one or more John or Jane Doe(s), and states as follows:

1.    Plaintiff is a seriously mentally ill ("SMI") prisoner in the custody of the Illinois Department of Corrections ("IDOC"). Plaintiff brings this action pursuant to 42 U.S.C. §1983 to redress violations of Plaintiff's rights under the Eighth and Fourteenth Amendments of the U.S. Constitution, and pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq. ("ADA"), and the Rehabilitation Act, 29 U.S.C. §794.

JURISDICTION AND VENUE

2.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§
1331, 2201 and 2202.

3.      Venue is proper in this District 28 U.S.C. § 1391(b), because a substantial part of
the events or omissions giving rise to this action occurred at Dixon Correctional Center
("Dixon"), in Dixon Illinois, in this District.

DEFENDANTS AND OTHER RELEVANT PERSONS/ENTITIES

4.      Defendant Donald Enloe is Acting Warden of Dixon, and has ultimate oversight
and approval authority over the housing and discipline of SMI inmates at Dixon.   Plaintiff sues
Defendant Enloe in his individual capacity and in his official capacity for declaratory and
injunctive relief.

5.      Defendant Randy Pfister is Warden of Pontiac Correctional Center ("Pontiac"),
and has ultimate oversight and approval authority over the housing and discipline of SMI
inmates at Pontiac.  Plaintiff sues Defendant Pfister in his individual capacity and in his official
capacity for declaratory and injunctive relief.

6.      Defendant Curt Eubanks is superintendent at Dixon and had responsibility for
SMI inmate housing and segregation reviews.  Plaintiff sues Defendant Eubanks in his individual
capacity.

7.      Defendant Jamie Chess was, at the relevant times, a clinical psychologist and, on
information and belief, the medical director or acting medical director at Dixon.  On information
and belief, Defendant Chess is employed by Wexford Health Sources, Inc. ("Wexford") and is
charged with responsibility for overseeing and supervising mental health services, mental health
professionals ("MHPs") and mental health staff at Dixon.  Plaintiff sues Dr. Chess in her
individual capacity.

8.     Defendant Sheila Stone is a clinical psychologist and MHP, and was the MHP representative on the SMI Inmate Segregation Review Committee at Dixon charged with reviewing Plaintiff's segregation sentences.  On information and belief, she is employed by Wexford.  Plaintiff sues Defendant Stone in her individual capacity.

9.     Defendant Joanna Kemmeren, who holds the rank or title of Major, is employed by IDOC at Dixon, and was, at the relevant times, the head of the "Seriously Mentally Ill Inmates Committee" and the chair of the Inmate Disciplinary Adjustment Committee.   Plaintiff sues Defendant Kemmeren in her individual capacity.

10.     Defendant Raphael Chavez is a Correctional Officer at Dixon and at certain relevant times, was the chair of the Inmate Disciplinary Adjustment Committee.  Plaintiff sues Defendant Chavez in his individual capacity.

11.     Defendant Lisa Schoenberger is a clinical psychologist and MHP, who was assigned to provide services to the Plaintiff and other inmates at Dixon, and was, on information and belief, employed by Wexford.  Plaintiff sues Defendant Schoenberger in her individual capacity.

12.     Defendant Patricia Vickroy is a clinical psychologist and MHP, who was charged on occasion with reviewing certain inmate offense charges against SMI inmates, including Plaintiff.  Plaintiff sues Defendant Vickroy in her individual capacity.

13.     Defendant Joshua Andrews is a correctional officer employed by IDOC at Dixon (I.D. # 8598).  Defendant Andrews is or was the team leader of the Dixon Tactical Team and was the officer in charge of that team on November 2, 2014.  Plaintiff sues Defendant Andrews in his individual capacity.

14.     Defendant Hanrahan is a Correctional Officer employed by IDOC at Dixon (I.D. # 8038).  Defendant Hanrahan is or was a member of the Dixon Tactical Team on November 2, 2014.  Plaintiff sues Defendant Hanrahan in his individual capacity.

15.     Defendants Enloe, Eubanks, Kemmeren and Chavez are hereinafter sometimes referred to as the "Dixon Authority Defendants" and, together with Defendant Pfister, the "Prison Authority Defendants."

16.     Defendants John and/or Jane Doe(s) ("Doe Defendants") were IDOC correctional or administrative officers or individuals acting or purporting to act as MHPs at Dixon or Pontiac ("MHP Doe Defendants").  The Doe Defendants and MHP Doe Defendants are sued in their individual capacities.

17.     At all times alleged in this Complaint, all Defendants were acting under the color of state law, and Plaintiff was in IDOC's custody.

18.     Wexford is a corporation headquartered, on information and belief, in Pittsburgh, Pennsylvania, and is authorized to conduct business in Illinois.  Through its MHP employees, Wexford provides health services to inmates in the custody of IDOC at Dixon and Pontiac, pursuant to a contract with IDOC or the State of Illinois.

## EVENTS RELEVANT TO ALL COUNTS

### Introduction

19.     Plaintiff suffers from serious mental health illnesses and/or conditions and has a history of suicide attempts.  IDOC considers and/or has classified Plaintiff as seriously mentally ill ("SMI").

20.     Plaintiff has, from time to time from 2002 to the present, been confined as an inmate in the custody of IDOC.  Plaintiff's current confinement commenced in 2014, and he was housed, until approximately January 7, 2015, at Dixon, a medium security facility.

4

21.     On or about January 7, 2015, Plaintiff was transferred to, and is currently housed, at Pontiac, a maximum security IDOC facility in Pontiac, Illinois.

22.     Physicians or other MHPs providing inmate care at Dixon or other IDOC facilities have, from time to time, diagnosed, recognized and/or characterized Plaintiff as having, among other things, Schizoaffective Disorder, Anxiety Disorder, Post-Traumatic Stress Disorder, Mood Disorder, Bipolar Disorder, Alcohol Use Disorder and/or Antisocial Personality Disorder (collectively, Plaintiff's "Mental Health Conditions").  IDOC physicians or MHPs have also concluded that Plaintiff suffers from paranoia, hears voices and is sometimes delusional.  IDOC physicians prescribed strong medications to Plaintiff for treatment of his Mental Health Conditions.  While he has been prescribed medications, Plaintiff has not otherwise received effective, consistent, adequate treatment for his Mental Health Conditions.

23.     The Prison Authority Defendants and Defendant Chess assigned Plaintiff to, or authorized, permitted or approved assignment of Plaintiff to housing units that were not equipped for, incapable of meeting, or adverse to Plaintiff's housing and treatment needs, and their conduct resulted in serious injuries to Plaintiff and continues to cause him harm.

24.     Inmate offenses, consisting of violations of regulations governing inmate conduct, are defined in an appendix to the Illinois Administrative Code.  *See* 20 Ill. Admin. Code §504, Appendix A.  Many of the offenses are so vaguely or loosely defined that they cover a wide range of conduct, permit correctional officers to arbitrarily classify conduct as offenses, and fail to provide prisoners with reasonable notice of what conduct can result in discipline.

25.     From approximately September, 2014 to the present, Plaintiff has repeatedly been cited for inmate offenses.  The Prison Authority Defendants, certain MHP Doe Defendants and Defendants Stone and Vickroy recommended, approved, permitted and/or authorized the imposition or continuation of segregation sentences against Plaintiff as the primary and preferred

5

punishment for his inmate offenses ("Segregation Practices"), and their conduct resulted in and continues to cause, serious injuries to Plaintiff. The Defendants knew at the time they engaged in the Segregation Practices and imposed, approved or signed off on segregation of Plaintiff that Plaintiff's offenses were in whole or in part, caused by or attributable to his Mental Health Conditions or to conduct in which he was prone to engage as a result of his Mental Health Conditions. As a direct result of those Defendants' Segregation Practices, Plaintiff was punished for his SMI with sequential segregation sentences, rather than being treated for them.

26. Defendants Stone and Vickroy and/or certain MHP Doe Defendants purported to provide MHP reviews of the proposed segregation punishments, but typically provided only perfunctory, arbitrary and often contradictory assessments. Even when Defendant Stone, Defendant Vickroy or the MHP Doe Defendants concluded that Plaintiff's Mental Health Conditions contributed to his conduct, the Prison Authority Defendants, Defendant Stone, Defendant Vickroy and/or the MHP Doe Defendants recommended, authorized, approved or acquiesced in segregation sentences or the continuation of segregation sentences and thus punished Plaintiff for his Mental Health Conditions rather than treating them.

Specific Events

27. In June, July and/or August 2014, while incarcerated at Dixon, Plaintiff went through mental health evaluations, and the treating physicians and/or MHPs noted Plaintiff's history of suicide attempts in his IDOC/Wexford records.

28. Dixon is equipped with a Special Treatment Center and a Psychiatric Unit, both of which specialize in housing SMI inmates.

29. Notwithstanding his well-established SMI status, and his Mental Health Conditions and history of suicide attempts, Defendant Chess and Defendant Eubanks and/or others of the Defendants denied him assignment to the Special Treatment Center or the

6

Psychiatric Unit and thus denied adequate and effective treatment for his Mental Health Conditions.

30.    Defendant Chess and Defendant Eubanks and/or others of the Defendants acted with deliberate indifference to Plaintiff's documented medical needs and assigned Plaintiff to a general population unit, under conditions that exacerbated his Mental Health Conditions, interfered with his treatments and exposed him to unnecessary anxiety and serious risks of harm from himself or others.

31.    In or about September, 2014, one or more of Defendant Chess, Defendant Eubanks, Defendant Kemmeren or the Doe Defendants housed Plaintiff with a cellmate, Willie Dodd, who, Plaintiff understood, had been found by Dixon officials to have collected pills with which to commit suicide.  The cellmate assignment caused Plaintiff great distress, and put Plaintiff, who had a history of suicide attempts and was susceptible to suggestion of self-harm in light of his Mental Health Conditions and the medications he was taking for them, at great risk of suicide or other self-injury.

32.    On or about September 24, 2014, Plaintiff was cited for certain nonviolent inmate offenses, consisting of "insolence", and disobeying orders relating to classroom work.  Plaintiff attributed his inability to participate in classwork to drowsiness from his medications. Notwithstanding Plaintiff's SMI, specific Mental Health Conditions, history of suicide attempts, and recent exposure to a suicide-prone cellmate, Defendant Kemmeren, as chair of the adjustment committee, with knowledge of and deliberate indifference to Plaintiff's Mental Health Conditions, recommended that Plaintiff serve 15 days of segregation, and one or more of the other Defendants authorized or approved that punishment, causing severe hardship upon and isolation of Plaintiff.

33.      In segregation at Dixon, Plaintiff was denied the freedom of movement allowed other inmates, and permitted to visit the yard only three times per week.  Otherwise, he was isolated in his cell 24 hours a day.

34.      In October, 2014, upon Plaintiff's release from segregation and notwithstanding Plaintiff's SMI status, Mental Health Conditions and his dependence upon medications for them, Defendant Chess, Defendant Eubanks, Defendant Kemmeren and one or more of the Doe Defendants, with deliberate indifference to Plaintiff's documented SMI, Mental Health Conditions and dependence on his medications, assigned Plaintiff to a cell with three other inmates, none of whom suffered from mental illnesses, under conditions that exacerbated his Mental Health Conditions, interfered with his treatments and exposed him to unnecessary anxiety and serious risks of harm.  The three cellmates each reportedly had some history of violence.  As a result of his SMI and real or merely perceived danger, Plaintiff felt outnumbered and unable to protect himself, and, out of fear that his medication would make him too sleepy or otherwise incapacitated to protect or defend himself from his cellmates, Plaintiff ceased to take or only irregularly took the medications on which he depended, exacerbating his Mental Health Conditions.

35.      On October 19, 2014, after and as a result of approximately ten days of not taking his medication or taking it only irregularly and having gone with little sleep, Plaintiff became agitated and reportedly engaged in nonviolent, but disruptive behavior.  Plaintiff was reported for two separate groups of inmate offenses under vaguely defined categories, including "insolence", unauthorized movement, disobeying a direct order and "health, smoking or safety violations" (the "October 19 Offenses").  In accordance with Defendants' Segregation Practices, notwithstanding his SMI, one or more of the Defendants caused Plaintiff to be punished by being immediately returned to segregation.

36.     Plaintiff was seriously injured on October 19, 2014, as a direct and proximate result of Defendants' conduct.  After having been left alone in a segregation cell in an agitated state for several hours, without sufficient monitoring, Plaintiff blocked the observation window in his cell.  One or more of the Doe Defendants disregarded Plaintiff's conduct, with knowledge that Plaintiff was an SMI inmate and in an agitated state, and took no action to investigate the obstructed view or to assure Plaintiff's safety.  Eventually, an IDOC Correctional Officer, Officer George, came on duty and found Plaintiff Span with his hands bound behind his back, hanging from a bed sheet tied around his neck, which was fastened to a coat hook in Plaintiff's cell.  Plaintiff was unresponsive.

37.     Officer George cut the bindings and summoned medical assistance.  Nurse Peppers was the first to respond and reportedly provided treatment to Plaintiff until an ambulance arrived.  Plaintiff was taken by ambulance to nearby KSB Hospital where he was treated by KSB physicians to restore consciousness and normal breathing and for serious strain injuries, including bruising and swelling to the inside and outside of his neck.  Plaintiff eventually regained consciousness and responsiveness at KSB Hospital and was released into IDOC custody.  Upon releasing Plaintiff to IDOC, the treating KSB physician instructed that Plaintiff be taken directly to the psychiatric unit for evaluation.

38.     Notwithstanding Plaintiff's SMI status, Mental Health Conditions, nearly successful suicide attempt, and resulting injuries, and notwithstanding the KSB physician's specific instructions for follow-up evaluation, Plaintiff was not adequately treated or evaluated, but instead Defendant Chess, Defendant Enloe, Defendant Eubanks, Defendant Kemmeren and/or one or more of the Doe Defendants or other named Defendants, caused Plaintiff to be held in harsh isolation and segregation conditions at Dixon.

39.     At the direction of or with approval of Defendant Chess, Defendant Enloe, Defendant Eubanks, Defendant Kemmeren and/or one or more of the Doe Defendants or other named Defendants, Plaintiff was placed for an extended period of approximately two weeks to 18 days on what purported to be a "suicide watch" in unnecessarily harsh and humiliating conditions that were contrary to KSB's medical direction and to Plaintiff's treatment needs. As a direct result of Defendants' conduct, Plaintiff was held, alone, in an apparently unheated and extremely cold, bare cell, often stripped naked, and with no blanket or other means to keep himself warm. During that time, Plaintiff was allowed to shower only once and to brush his teeth only once (without toothpaste). The harsh, humiliating and unsanitary conditions imposed upon Plaintiff were not reasonably related to his treatment needs or to any legitimate safety or penal interests.

40.     Plaintiff believes and asserts that the harshness of the conditions Defendants imposed upon him were intended as punishment for the October 19 suicide attempt and, in effect, as punishment, rather than treatment, for his SMI, Mental Health Conditions and suicide attempt.

41.     In connection with the imposition of formal punishment for the October 19 Offenses, Defendant Vickroy concluded that Plaintiff's Mental Health Conditions contributed to at least some of Plaintiff's conduct and concluded and reported that segregation was clinically inappropriate for him.

42.     In November 2014, notwithstanding Plaintiff's SMI and Mental Health Conditions and their contribution to certain of the October 19 Offenses, and thus acting with deliberate indifference to them, Defendant Chavez recommended that Plaintiff be sentenced for the October 19 Offenses to an additional 45 day term in segregation and transferred to the higher security IDOC facility at Pontiac, and Defendant Enloe, also acting with deliberate indifference

to Plaintiff's Mental Health Conditions and suicide attempt, approved the harsh and inappropriate sentence.

43.     Between October 24, 2014 and October 31, 2014, while on the harsh "suicide watch," and while suffering the continuing effects of his injuries, including mental distress, pain and stiffness, Plaintiff was written up for three additional, vaguely-defined offenses ("Late October 2014 Offenses").  Notwithstanding and with deliberate disregard for Plaintiff's SMI, documented Mental Health Conditions and Plaintiff's well-known near suicide days earlier in segregation conditions, and notwithstanding at least one MHP report that Plaintiff was "not stable," Defendant Chavez recommended that Plaintiff receive an additional three months in segregation, and Defendant Enloe approved and authorized the harsh and inappropriate segregation sentence.

44.     Defendant Vickroy and/or one or more other Defendants or MHP Doe Defendants purported to review the charged Late October 2014 Offenses, but conducted only a perfunctory review and authorized segregation notwithstanding and in deliberate disregard of Plaintiff's SMI, Mental Health Conditions and serious suicide attempt, and notwithstanding Defendant Vickroy's own prior conclusion that segregation was inappropriate.

45.     On November 2, 2014, after approximately two weeks on "suicide watch" isolation conditions, Defendant Schoenberger, or one or more MHP Doe Defendants, abruptly and summarily directed that Plaintiff be stripped naked for an intense, "10 minute" suicide watch.  At the time, Defendant Schoenberger or other MHP Doe Defendant knew that Plaintiff Span was in an agitated state due to his Mental Health Conditions and the harsh, ongoing segregation conditions he had endured, that he would resist removal of his clothing and that compelling the removal of his clothing posed a substantial risk of harm to him.  Nevertheless, Defendant Schoenberger or other Doe Defendant or MHP Doe Defendant requested that a

tactical team be called to Plaintiff's cell to confront and forcibly strip Plaintiff naked for the unnecessary 10 minute watch.

46.     Defendant Andrews and Defendant Hanrahan (among other members of the tactical team) confronted Plaintiff, who was confined alone in his cell. Notwithstanding Plaintiff's Mental Health Conditions and that Plaintiff posed no physical threat to anyone, Defendant Andrews sprayed Plaintiff in the face, head and neck with an LE-10 stream (pepper spray).  Defendant Hanrahan then jumped on Plaintiff with a large plastic shield, slamming Plaintiff's face into the floor, causing Plaintiff's tooth to puncture his lip.  At the time Defendants Andrews and Hanrahan entered Plaintiff's cell, Plaintiff was lying on the floor, face down, with his hands behind his back.  Defendant Andrews' and Defendant Hanrahan's conduct constituted a deliberate use of unnecessary and excessive force.

47.     Plaintiff was then stripped of his clothing and left naked.  The purported ten minute suicide watch served no legitimate health or penal interest.  To the contrary, Plaintiff suffered humiliation, emotional distress, an injury to his lip and swollen jaw and other discomfort.  With the exception of an eye rinse, Plaintiff was not permitted to wash off the pepper spray for approximately five days.

48.     After and as a result of the November 2, 2014 incident, in accordance with the Segregation Practices, Defendants again punished Plaintiff with an additional sentence of segregation, even though Span's Mental Health Conditions directly caused or contributed to the behavior for which he was punished.

49.     Over the next months, the cycle of stressful segregation, exacerbated symptoms, disruptive conduct, and more segregation punishment continued.  Plaintiff was charged with ill-defined inmate offenses on November 9, 2014, November 10, 2014, November 21, 2014, and December 13, 2014.  The offenses included "insolence," "intimidation or threats," "damage to

property," "unauthorized movement," "sexual misconduct" and "disobeying a direct order." Defendant Chavez and/or other Doe Defendants acting in accordance with the Segregation Practices, recommended that Plaintiff receive at least four additional months of segregation and a disciplinary transfer to Pontiac, in deliberate disregard of Plaintiff's Mental Health Conditions, SMI, recent suicide attempt and treatment needs. Defendant Enloe, in deliberate disregard of those same conditions, events and needs, authorized and approved each sentence.

50.     Defendant Vickroy and/or certain of the MHP Doe Defendants purported to review at least some of the inmate offenses with which Plaintiff was charged.  Notwithstanding Plaintiff's SMI, recent suicide attempt and Mental Health Conditions and Defendant Vickroy's conclusion that Plaintiff was not stable, those Defendants recommended that Plaintiff be punished with additional terms of segregation or approved or acquiesced in those proposed punishments.  Those Defendants acted with deliberate disregard and indifference to Plaintiff's Mental Health Conditions, SMI, recent suicide attempt, need for treatment and the adverse impact prolonged segregation would have on him.

51.     On or about December 18, 2014, Defendants Eubanks and Stone, charged with a review of Plaintiff's long-term segregation sentence, and Defendant Enloe, who had ultimate authority over long term segregation sentences of SMI inmates, rejected any reduction in Plaintiff's segregation term.  These Defendants acted with deliberate disregard and indifference to the Plaintiff's Mental Health Conditions, SMI, recent suicide attempt, need for treatment and the adverse impact prolonged segregation would have upon him and even though Plaintiff's conduct was caused by his SMI and some of his conduct was expressly attributed by MHPs to his Mental Health Conditions.

52.     Plaintiff Span was transferred to Pontiac on or about January 7, 2015, and remains in segregation there as a result of the discipline imposed at Dixon and thereafter at Pontiac.

53.     Span's segregation at Pontiac consists of being held, alone, in a small, concrete, windowless, un-ventilated cell, with a steel door, where meals are delivered through a narrow opening in the door.

54.     When not on "yard restriction" at Pontiac, Plaintiff was permitted out of his cell to visit the yard only twice per week and was allowed a shower just once per week.  For most of his time at Pontiac, however, Plaintiff has also been on "yard restriction."  While on "yard restriction," with the exception of one hour in the "yard" *per month* and one shower per week, Plaintiff is confined alone in a small, window-less, unventilated, concrete and steel cell, 24 hours per day, without exposure to companionship, sunlight, fresh air or exercise.

55.     Plaintiff has received citations at Pontiac for non-violent, but ill-defined inmate offenses, including "insolence," disobeying an order, and "sexual misconduct."

56.     For those offenses, with knowledge of and notwithstanding his Mental Health Conditions, SMI and recent suicide attempt and in deliberate disregard of them, Defendant Pfister has authorized additional harsh, lengthy sentences of segregation and months' long imposition of yard restrictions on Plaintiff.

57.     Although one or more MHP Doe Defendants at Pontiac purported to review the inmate offenses charged against Plaintiff and purported to assess whether Plaintiff's Mental Health Conditions contributed to his conduct, the review was perfunctory and the determinations made were arbitrary and inconsistent.  MHP Doe Defendants at Pontiac recommended, authorized or acquiesced in additional segregation sentences and Defendant Pfister authorized and approved those sentences, even when the MHP concluded and acknowledged that Plaintiff is unstable and that his Mental Health Condition contributed to certain of the conduct charged, thus punishing, rather than treating, Plaintiff for his Mental Health Conditions.

58.     In accordance with the Segregation Practices, and the Pontiac MHP Doe Defendants' arbitrary and superficial assessments and failure to properly consider and treat his Mental Health Conditions, Plaintiff has been sentenced to approximately *two more years* of segregation time at Pontiac, often combined with equal periods of yard restriction.  Plaintiff now faces segregation sentences at Pontiac extending into at least late 2017.

59.     Plaintiff has not received and has been denied effective, consistent treatment for his Mental Health Conditions at Dixon and at Pontiac.

60.     Defendant Pfister has oversight responsibility and control over conditions imposed at Pontiac on SMI inmates, including Span.  Defendant Pfister personally authorized imposition on Plaintiff of the harsh sentences described above at Pontiac and has permitted them to continue.  Defendant Pfister also disregarded certain MHP recommendations that Plaintiff be "double-celled" (i.e., placed in a cell with a cell-mate) for his own safety.

61.     The harsh, degrading, humiliating and damaging segregation and yard restriction punishments imposed on Plaintiff serve no reasonable, legitimate health, safety or penal interests.  The punishments and segregation imposed upon him and which continue to be imposed upon him served to exacerbate his Mental Health Conditions and to delay or deprive him of any effective treatment for his Mental Health Conditions.

62.     Plaintiff also considers the most recent series of disciplinary reports at Pontiac, and the punishments he received to be retaliation for Plaintiff's having exercised his rights to file grievances and this lawsuit.

## Count I

### Violations of the Eighth and Fourteenth Amendments
### to the U.S. Constitution Against the Prison Authority Defendants,
### the Doe Defendants and Defendants Chess, Vickroy and Stone.

63.     Plaintiff incorporates by reference the allegations of each and all of the foregoing paragraphs, as if fully set forth herein.

64.     Each of the Defendants acted under color of state law and pursuant to authority granted them as employees and/or officials of the State of Illinois or the Illinois Department of Corrections.

65.     The Defendants, through the acts and omissions described above, deprived Plaintiff of his rights under the Eighth and Fourteenth Amendment to be free of cruel and unusual punishments.

66.      The Defendants, through the acts and omissions described above, wrongfully caused Plaintiff unnecessary pain and suffering by housing him with cellmates actively contemplating suicide and cellmates of whom Plaintiff was foreseeably frightened, and ultimately imposing segregation conditions upon him, and subjected him to foreseeable risks of self-harm and suicide.

67.     The Defendants, through the acts and omissions described above, also wrongfully subjected Plaintiff to cruel and unusual punishment for his Mental Health Conditions and resulting suicide attempt.  The punishments they inflicted included the extreme deprivations imposed upon him during the prolonged suicide watch, the sequential imposition of segregation terms, the punitive transfer to the harsh, segregation conditions at Pontiac, and the imposition of still longer segregation terms and yard restrictions there.

68.     The Defendants subjected Plaintiff to extraordinarily harsh and isolated environments for extended periods of time, thus imposing  atypical and significant hardships upon him in relation to the ordinary incidents of prison life.

69.     The segregation conditions imposed on Plaintiff further exacerbated Plaintiff's Mental Health Conditions, resulting in additional citations and further punishments.

70.     Defendants failed to properly take into account and deliberately disregarded Plaintiff's Mental Health Conditions and history of suicide attempts and the exacerbation of those conditions by the very punishments Defendants had imposed and thereby violated Plaintiff's liberty interests and due process rights secured under the Fourteenth Amendment.

71.     As a direct and proximate result of the Defendants' conduct and violations of Plaintiff's constitutional rights, as described above, Plaintiff has sustained both physical and mental harm, injuries and damages.  Plaintiff's injuries included the physical injuries Plaintiff suffered from the suicide attempt on October 19, 2014, the intense, harmful and humiliating "suicide watch" conditions imposed thereafter, the physical injuries Plaintiff suffered as a result of the tactical team incident and forceful stripping of Plaintiff on November 2, 2014 and the prolonged, months long isolation and deprivations suffered thereafter at Dixon and Pontiac.

72.     Defendants' actions have also caused Plaintiff to suffer punishment disproportionate to any infraction he may have committed, particularly in light of Plaintiff's Mental Health Conditions.  The severe, prolonged punishments to which Defendants have subjected Plaintiff serve no legitimate health, security or penal interest.

73.     The disproportionate punishments imposed upon Plaintiff also violate his rights under the Eighth and Fourteenth Amendments.

74.     As a proximate result of the Defendants' unconstitutional conduct and deliberate indifference, as described above, Plaintiff will continue to suffer immediate and irreparable

injury, including physical deprivations, psychological and emotional injury and risk of further injury or self-injury, and he has no adequate or complete remedy at law to address the wrongs described herein.

## Count II

**Violations of the Eighth and Fourteenth Amendments to the U.S. Constitution and of Plaintiff's Liberty Interests, Against Defendants Enloe, Pfister, Eubanks, Chess, Vickroy, Stone, Schoenberger and the MHP Doe Defendants. (Failure to Provide Medical Care)**

75.    Plaintiff incorporates by reference the allegations of each and all of the foregoing paragraphs, as if fully set forth herein.

76.    Plaintiff has serious Mental Health Conditions that require treatment.

77.    All Defendants acted under color of state law, as described above.

78.    Through their conduct, described above, Defendants were deliberately indifferent to Plaintiff's serious medical needs.  Instead, through their conduct, Defendants punished Plaintiff for his Mental Health Conditions and denied Plaintiff adequate treatment for, and in fact exacerbated his Mental Health Conditions.

79.    As described above, Defendant Schoenberger or others of the MHP Doe Defendants further denied Plaintiff medical treatment and exacerbated his conditions by causing Plaintiff to be accosted by the tactical team, sprayed with pepper spray and forcibly stripped of his clothing while already in an agitated state, thereby subjecting him to additional harsh punishment for his Medical Health Conditions.  The conditions were atypical and significant hardships upon him in relation to the ordinary incidents of prison life.

80.    Defendants' conduct in depriving Plaintiff of necessary medical treatments and demonstrating deliberate indifference to his Mental Health Conditions, subjected him to cruel and unusual punishments.

81.     As a direct and proximate result of the Defendants' violations of Plaintiff's rights under the Eighth and Fourteenth Amendments, Plaintiff has been deprived of adequate necessary medical treatments for his injuries and Mental Health Conditions.

82.     As a direct and proximate result of Defendants' unconstitutional conduct and deliberate indifference, Plaintiff was seriously injured, as described above.  His injuries included the serious neck injuries and emotional trauma from his suicide attempt of October 19, 2014, the deprivations and humiliations of "suicide watch," the physical assault he suffered on November 2, 2014, and the further humiliations and emotional trauma of continued isolation, lack of adequate clothing, sanitation, sunlight and exercise.

83.     As a proximate result of Defendants' unconstitutional conduct and deliberate indifference, as described above, Plaintiff will continue to suffer immediate and irreparable injury, including physical deprivations, psychological and emotional injury and risk of further injury, and he has no adequate or complete remedy at law to address the wrongs described herein.

### Count III

**Discrimination Based on Disability Against the Prison Authority Defendants, Defendants Chess, Vickroy, Stone, Schoenberger and the Doe Defendants (Title II of the ADA)**

84.     Plaintiff incorporates by reference the allegations of each and all of the foregoing paragraphs, as if fully set forth herein.

85.     The Dixon and Pontiac facilities in which Plaintiff was and currently is housed are public entities as that term is defined in 42 U.S.C §12131.

86.     Each of the Defendants acted at all relevant times in their official capacities as representatives of at least one of these public entities.

19

87. Plaintiff is a qualified individual with a disability as defined under the ADA and its implementing regulations, including 42 U.S.C. §12131(2) and §12102(2). Plaintiff has mental and/or physical impairments that substantially limit one or more major life activities, has a record of having such impairments and is regarded as having such impairments.

88. Plaintiff meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendants.

89. Defendants have discriminated against Plaintiff on the basis of his disabilities in at least the following ways:

(a) Refusing to reasonably accommodate Plaintiff at the Dixon Special Treatment Center, the Dixon Psychiatric Unit or other suitable IDOC mental health facility;

(b) Refusing to provide Plaintiff with proper treatment for his Medical Health Conditions despite knowledge of such SMI;

(c) Refusing to reasonably accommodate Plaintiff's disabilities and instead discriminating against him in ways that increased the severity of his Medical Health Conditions including by placing him with cellmates preparing to commit suicide, with cellmates who presented a real or perceived danger to Plaintiff and instilled fear in him, and by placing him as punishment in segregation, prolonged segregation and segregation combined with yard restrictions;

(d) Failing to reasonably accommodate Plaintiff's disabilities and instead discriminating against him in ways that increase the severity of and punished him for his Mental Health Conditions by such methods as depriving him of clothes, heat and sanitary surroundings.

90. In acting in the manner alleged above, Defendants have unlawfully discriminated against Plaintiff in violation of the ADA.

91. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer immediate and irreparable harm and injury, including physical, psychological and emotional injury, including the risk of self-harm and the risk of

death.  Plaintiff has no plain, adequate, or complete remedy at law to address the wrongs described herein.

## Count IV

**Violation of the Rehabilitation Act Against the Prison Authority Defendants, Defendants Chess, Stone, Vickroy, Schoenberger and the Doe Defendants (Rehabilitation Act)**

92.     Plaintiff incorporates by reference the allegations of each and all of the foregoing paragraphs, as if fully set forth herein.

93.     Upon information and belief, the IDOC receives federal financial assistance, thus making it subject to Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a) and §705(20).

94.     Plaintiff is an otherwise qualified individual with a disability as defined in the Rehabilitation Act and implementing regulations.  Plaintiff has mental and/or physical impairments that substantially limit one or more major life activities, has a record of having such impairments and is regarded as having such impairments.

95.     Plaintiff meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendants.

96.     Defendants have discriminated against Plaintiff on the basis of his disabilities in at least the following ways:

> (a)     Refusing to reasonably accommodate Plaintiff at the Dixon Special Treatment Center, the Dixon Psychiatric Unit or other suitable IDOC mental health facility;

> (b)     Refusing to provide Plaintiff with proper treatment for his Medical Health Conditions despite knowledge of such SMI;

> (c)     Refusing to reasonably accommodate Plaintiff's disabilities and instead discriminating against him in ways that increased the severity of his Medical Health Conditions including by placing him with cellmates preparing to commit suicide, with cellmates who presented a real or perceived danger to Plaintiff and instilled fear in him, and by placing him as punishment in segregation, prolonged segregation and segregation combined with yard restrictions;

21

(d)     Failing to reasonably accommodate Plaintiff's disabilities and instead discriminating against him in ways that increase the severity of his Mental Health Conditions by such methods as depriving him of clothes, heat and sanitary surroundings.

97.     In acting in the manner alleged above, Defendants have unlawfully discriminated against Plaintiff in violation of the Rehabilitation Act.

98.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer immediate and irreparable harm and injury, including physical, psychological and emotional injury, including the risk of self-harm and the risk of death.  Plaintiff has no plain, adequate, or complete remedy at law to address the wrongs described herein.

## Count V
### Violations of the Eighth and Fourteenth Amendments to the U.S Constitution Against Defendants Schoenberger, Andrews and Hanrahan (Excessive Force)

99.     Plaintiff incorporates by reference the allegations of each and all of the foregoing paragraphs, as if fully set forth herein.

100.     Each of Defendants Schoenberger, Andrews and Hanrahan acted under color of state law and pursuant to authority granted them as employees, officers, MHPs and/or officials of the State of Illinois or the Illinois Department of Corrections.

101.     Through the November 2, 2014 acts and omissions described above, Defendants wrongfully caused Plaintiff unnecessary pain and suffering and used excessive force against him, in violation of his rights under the Eighth and Fourteenth Amendments.

102.     Through their conduct, Defendants wrongfully subjected Plaintiff to punishment and humiliation for his Mental Health Conditions and resulting suicide attempt, including by using pepper spray upon him, hitting him with a shield, causing his face to strike the cell floor and forcibly stripping him of his clothing.

22

103. As a direct and proximate result of the Defendants' conduct and violations of Plaintiff's constitutional rights, as described above, Plaintiff has sustained both physical and mental harm, injuries and damages.

104. Defendants' actions also caused Plaintiff to suffer punishment disproportionate to any infraction he may have committed, particularly in light of Plaintiff's Mental Health Conditions.

105. The disproportionate punishments imposed upon Plaintiff also violate his rights under the Eighth and Fourteenth Amendments.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against the Defendants, awarding the following relief:

A. Declaration that the Defendants' acts and omissions violated Plaintiff's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution;

B. Enter preliminary and permanent injunctive relief, requiring the Defendants to house Plaintiff, for the duration of his sentence, at the Special Treatment Center and a Psychiatric Unit or other appropriate IDOC facility designed for the accommodation and treatment of SMI inmates;

C. Enter preliminary and permanent injunctive relief, prohibiting the imposition of segregation upon Plaintiff at any time for a period in excess of two weeks and only for an offense that constitutes violent behavior or otherwise presents a serious infraction compromising the order or security of the facility;

D. Award Plaintiff compensatory and punitive damages against all defendants named in an individual capacity, and

E.      Award such costs as this Court deems just and proper.


**PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS.**


Dated:  September 11, 2015                    Respectfully submitted,
                                              **PLAINTIFF SAMUEL SPAN**


                                              By: /s/Patricia K. Smoots    
                                              One of his Attorneys

Patricia K. Smoots
Judy Tsui
McGuireWoods LLP
77 W. Wacker Drive
Suite 4100
Chicago, IL 60601-1815
312/849-8100


69163231_5