30000.00/tlt/1273599 #412

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| SAMUEL SPAN, (R12605), | ) | |
| | ) | No. 15 C 50063 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | |
| RAPHAEL CHAVERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF CONCERNING**
**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Counsel for Plaintiff Samuel Span
Jordan D. Shea, #6293777
Williams Montgomery & John Ltd.
233 South Wacker Drive, Suite 6800
Chicago, Illinois 60606
T: 312-443-3200
F: 312-630-8586
jds@willmont.com

**Facts**

On November 5, 2014, Span was released from special suicide watch housing and transferred back to his cell in the Segregation Unit at Dixon Correctional Center. (Ex. A,[1] Span test. 28:7-15.) Once he was returned to his cell in Segregation Unit, Span asked a correctional officer to provide grievance forms. (*Id.* at 28:10-19.) The same day, Span filled out the grievance that is the subject of the current dispute (the "11/5/14 grievance"). (*Id.* at 28:20-29:8.) The grievance described events that occurred at Dixon in September and October 2014. (*Id.* at 23:10-17.)

After completing the 11/5/14 grievance, Span had a copy made. (*Id.* at 25:15-20.) Span then placed the original 11/5/14 grievance in "inmate mail" outside of his Segregation Unit cell. (*Id.* at 29:16-21.) All inmate mail is first routed from the inmate's cell to the mail room, and then the mail room staff send all grievances to the Dixon counselors. (*Id.* at 30:2-3.)

In Span's experience submitting grievances at Dixon, counselors may take anywhere from a week to two months in responding to a grievance. (*Id.* at 30:8-12.) In December 2014, Span saw his counselor for the first time since November. (*Id.* at 30:20-25.) Span asked his counselor for a status update on his 11/5/14 grievance and was told that a response was forthcoming. (*Id.* at 31:1-7.) But after being transferred from Dixon to Pontiac Correctional Center, Span never saw his Dixon counselor again. (*Id.* at 31:8-15.)

Following the transfer to Pontiac—having received no response from the Dixon counselor for two-and-a-half months—Span sent a copy of the grievance to the Administrative Review Board (ARB). (*Id.* at 30:4-7; Pl. Ex. 2, Jan. 2015 Ltr. to ARB.) The ARB returned the grievance, with a box circled to note that the grievance was "not submitted in the timeframe outlined in Department Rule 504; therefore this issue will not be addressed further." (Pl. Ex. 3, ARB 2/11/15 Return of Grievance.)

---

[1] Exhibits A and B are attached hereto. References to numbered "Pl. Ex" mean the exhibits plaintiff submitted for the July 18, 2018 Pavey hearing

1

Span filed this lawsuit on March 17, 2015. (Span test. 9:6-8.) But even since then, Span has attempted to find out what happened to the 11/5/14 grievance. (Ex. A, Span test. at 10:17-19.) In a December 26, 2017 grievance, Span asked to "have grievance officer contacted [at] Dixon C.C. for status on grievance filed on 11-5-14…" (Pl. Ex. 4; 12/26/17 grievance.) Span's Pontiac counselor responded: stating "Dixon's grievance officer was contacted and they do not have a record of a grievance from 11/5/14. They stated that their current logs do not go back that far." (Ex. A, Span test. 10:20-11:2; Pl. Ex. 5, 1/3/18 Counseling Summary.) Three days later, on January 6, 2018, the Pontiac grievance officer directed Span to submit the grievance directly to the ARB. (Ex. A, Span test. 11:5-8; Pl. Ex. 8, 1/6/18 grievance officer response.) Finally, the ARB returned the 12/26/17 grievance without following up on the 11/5/14 grievance, noting that "this issue will not be addressed further." (Ex. A, Span test. 11:20-12:7; Pl. Ex. 7, ARB 1/16/18 Return of Grievance.)

**Argument**

A prisoner must exhaust administrative remedies prior to filing suit in federal court. *Pavey v. Conley,* 544 F.3d 739, 740 (7th Cir. 2008). Generally the exhaustion requirement obligates a prisoner to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Brengettcy v. Horton,* 42 F.3d 674, 682 (7th Cir. 2005). Where a prisoner is transferred between facilities during the pendency of the grievance process, the prisoner must direct his grievance to the entity responsible for the conditions challenged in the grievance, *King v. McCarty,* 781 F.3d 889, 894 (7th Cir. 2015), which in this case is Dixon. Exhaustion is an affirmative defense that the defendants have the burden of proving. *Brengettcy,* 42 F.3d at 682.

    **I.    By submitting the grievance at Dixon and never receiving a response, Span has exhausted his administrative remedies.**

A prisoner must exhaust only those administrative remedies that are available to him. *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002). "[P]rison officials' failure to respond to a prisoner's claim can render administrative remedies unavailable." *Brengettcy,* 423 F.3d at 682. "Prison authorities

2

cannot immunize themselves from suit by establishing procedures that in practice are not available because they are impossible to comply with or simply do not exist." *King,* 781 F.3d at 893.

This case bears some similarity to *Dole v. Chandler,* 438 F.3d 804 (7th Cir. 2006). In that case, the plaintiff-inmate, Dole, alleged he was beaten while at Menard Correctional Center, and then was transferred to Tamms Correctional Center. Because the incident occurred at Menard, the counselor at Tamms directed Dole to send his grievance directly to the Administrative Review Board (ARB). *Id.* at 807. Dole placed the grievance in an envelope addressed to the ARB and then into the "chuckhole" of his cell for the guard to pick up and mail. *Id.* at 807. After receiving no response from the ARB, Dole sent another letter to inquire about the grievance's status. *Id.* at 805. The ARB responded that it had no record of receiving the original grievance, and then Dole filed his suit. *Id.* The court found that Dole complied with his obligations and the only misstep in the process "was entirely that of the prison system." *Id.* at 810. "Because Dole properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that Dole failed to exhaust his remedies." *Id.* at 811. The court further explained that where a timely grievance is lost, and then the ARB was notified but did not clarify any additional steps to take, "Dole had done all that was reasonable to exhaust his administrative remedies." *Id.* at 812.

Here, like in *Dole*, Span completed a grievance form and placed it outside his cell for inmate mail in accordance with prison policy. *See* 20 Ill. Adm. Code § 504.810(c) (mandating "[t]he original grievance form shall be deposited in the living unit mailbox ….") Span, like Dole, received no response so he followed up with his counselor at Dixon, his counselor at Pontiac, and the ARB. IDOC does not maintain grievances and eventually advised Span that they could not find the grievance because "their current logs do not go back that far." (Pl. Ex. 5, 1/3/18 Counseling Summary.) The evidence shows that Span complied with his obligations, and like in *Dole*, the only missteps were "entirely that of the prison system." *See Dole,* 438 F.3d at 810.

3

**II. Defendants' suggestion that the grievance is a forgery is unsupported by the evidence and does not withstand scrutiny.**

Ms. Benton appeared to suggest—without explicitly stating—that Span never submitted anything on November 5, 2014. Her theory must be that the November 5, 2014 grievance is some kind of backdated forgery actually written in January 2015. Such a theory makes little sense considering the evidence.

Span is familiar with filing grievances. It makes perfect sense that he would request a grievance form to complain, among other things, about his placement on suicide watch the day he was released from suicide watch. The grievance also complained of Span's extended time in the segregation unit. Either Span or the counselor may be mistaken about the date, but the counseling summary notes that Span followed up with the counselor, asking "how long he will be in seg." (Def. Ex. C at ARB 65, Counseling Summary at 11/10/14.) Span's January 2015 letter to the ARB confirms that Span wrote the grievance two-and-a-half months earlier and had received no response from the Dixon counselor. (Pl. Ex. 2, Jan. 2015 Ltr. to ARB.) And having never received his original grievance back from the Dixon counselor, of course Span's copy of the document has no grievance number on it.

To the extent defendants rely upon a lack of entry in the November 2014 counseling summary, the evidence has established that the document is inherently untrustworthy for reliance upon the lack of entry as proof of the nonoccurrence of an event. The only witness with any knowledge of the contents or trustworthiness of the summary stated that she has no idea (1) how much time passes between a counselor meeting a cell and a later write-up in the counselor's office at a computer; (2) how the counselor retains information between the meeting and the data entry, or whether the counselor takes any notes, (3) how many offenders the counselor meets with before making entries in his office. (Ex. A, Benton test. 54:1-24.) The mere fact that the counseling summary does not make explicit reference to the grievance is insufficient evidence that the grievance was not properly submitted, and defendants have not met their burden.

4

### III. The grievance provides sufficient description of the private defendants.

The regulatory framework directs an inmate to include the names of each person involved in the complaint, but allows that "when the names of individuals are not known … the offender must include as much descriptive information about the individual as possible." Ill. Admin. Code § 504.810(c). Span complied with Section 504.810(c). Relevant to this issue, Span's grievance provides:

- "On Oct. 14th 2014 … I was found hanging by the neck…. I was then placed in a 'suicide watch cell.' I was questioned each day by 'mental health staff members.' I assured them I was fine and had no future intentions of self harm…. I was kept on 'watch' for (18) days…. When I asked the mental health staff why I was being left on watch for so long and why [there are] no showers or any other form of personal hygiene I was told 'this is how we treat people who try to kill themselves.'"
- "[T]he mental health staff elected to use those disciplinary reports as reason to leave me on 'watch' for as long as they did…. I believe that 'mental health' went too far and used the 'harshness' of the 'watch' as punishment for my suicide attempt."

(Pl. Ex. 1, 1/5/14 grievance.) Span clearly identified that he is complaining of the Dixon Correctional Center mental health staff who were responsible for placing him on suicide watch for 18 days beginning October 14, 2014.

As explained in the Second Amended Complaint, the private defendants responsible for the improper mental health treatment have been identified. Defendant Chess was the Medical Director at Dixon at the time. (Ex. B, 2d Am. Compl. ¶ 7.) Defendant Stone is a Mental Health Professional responsible for reviewing segregation assignments. (*Id.* at ¶ 8.) Defendant Vickroy is a Mental Health Professional responsible for reviewing disciplinary reports against mentally ill prisoners. (*Id.* at ¶ 12.) And defendant Schoenberger is a psychologist and Mental Health Professional assigned to provide services to Span. (*Id.* at ¶ 11.) The descriptions in Span's 11/5/14 grievance adequately describe the Mental Health Professionals who were ultimately identified and named in the Second Amended Complaint.

WHEREFORE Plaintiff Samuel Span respectfully requests that this Court enter an Order finding that Span properly exhausted his administrative remedies under the circumstances, and provide any other relief this Honorable Court deems just under the circumstances.

Dated: August 3, 2018                                             Respectfully Submitted,


                                                                  *s/ Jordan D. Shea*
                                                                  Counsel for Plaintiff Samuel Span

Jordan D. Shea, #6293777
Williams Montgomery & John Ltd.
233 South Wacker Drive, Suite 6800
Chicago, Illinois 60606
T: 312-443-3200
F: 312-630-8586
jds@willmont.com


**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2018, I electronically filed the foregoing document with the Clerk of the Court for the Northern District of Illinois, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

                                                                  */s/ Jordan D. Shea*
                                                                  Jordan D. Shea (ARDC #6293777)
                                                                  WILLIAMS MONTGOMERY & JOHN LTD.
                                                                  *Attorney for Plaintiff Samuel Span (R12605)*