IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| SAMUEL SPAN, (R12605), | ) | No. 15 CV 50063 |
| | ) | |
| *Plaintiff*, | ) | Magistrate Judge Iain D. Johnston |
| | ) | |
| v. | ) | |
| | ) | |
| RAPHAEL CHAVEZ, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

### REPORT & RECOMMENDATION

Plaintiff Samuel Span alleges that, among other things, defendants were deliberately indifferent to his mental illnesses and psychiatric disorders while incarcerated at the Dixon Correctional Center and Pontiac Correctional Center. *See* 42 U.S.C. § 1983. In response, defendants assert the affirmative defense of failure to exhaust administrative remedies. So the court conducted a hearing under *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). For the reasons set forth below, the Court finds that, except as to Defendant Pfister, the defendants have not met their burden to show that plaintiff failed to exhaust his administrative remedies. Therefore, it is this Court's Report and Recommendation that (1) plaintiff's claims be dismissed as to defendant Pfister for failure to exhaust, and (2) the remaining defendants' affirmative defense of failure to exhaust be denied and that plaintiff's case against them be allowed to proceed.

### I. BACKGROUND

According to plaintiff's allegations, the plaintiff was an inmate of Dixon Correctional Center from 2014 until his transfer to the Pontiac Correctional Center on January 7, 2015. Mental health providers (including employees of Wexford), the Illinois Department of Corrections ("IDOC"), and other physicians have diagnosed plaintiff with a variety of mental disorders, including Schizoaffective Disorder, Anxiety Disorder, paranoia, delusions, Bipolar Disorder, Post-Traumatic Stress Disorder, Mood Disorder, Alcohol Use Disorder, Antisocial Personality Disorder, and a history of suicide attempts, and prescribed plaintiff with strong medications to treat these disorders. Second Am. Compl. Dkt. No. 52 at ¶¶ 20, 29. The IDOC has considered or classified him as seriously mentally ill ("SMI"). *Id.* at ¶ 17.

In September 2014, plaintiff was housed with a suicide-prone cellmate, agitating his mental state. *Id.* at ¶ 29. He was cited for insolence and sentenced to segregation until October 2014, when he was released and was placed in a cell with violent inmates. Plaintiff committed two more offenses on October 19, 2014 and was immediately sent back to segregation. That

same day, plaintiff attempted to commit suicide in the segregation cell. Plaintiff was eventually discovered there and sent to KSB hospital, where he was treated. While being returned to IDOC custody, the KSB physician instructed plaintiff be taken immediately to the psychiatric unit for evaluation. Plaintiff alleges that he was put in harsh isolation for approximately two weeks as punishment for this attempted suicide. *Id.* at ¶¶ 35-38.

In late October 2014, plaintiff was written up for three more offenses, which he attributed to his recent suicide attempt, and again received segregation as punishment. From November through December, plaintiff alleges defendants repeatedly cited him for other prison offenses as punishment for his suicide attempt and in disregard of his SMI status. Once transferred to Pontiac on January 7, 2015, plaintiff was kept in segregation and was cited with more offenses, though he attributes the offenses to his mental health history. Defendant Pfister, like the defendants at Dixon, allegedly instituted these and other punishments at Pontiac in disregard of plaintiff's SMI status and mental health. *Id.* at ¶¶ 50-55. Plaintiff contends this treatment was a punishment of his mental condition and retaliation by Pontiac staff for filing this lawsuit. *Id*. at ¶¶58-60.

According to plaintiff's testimony at the *Pavey* hearing and relevant exhibits, plaintiff filed two grievances upon which he relied to demonstrate that he exhausted his administrative remedies. First, he made a copy of and filed a grievance with his counselor at Dixon on November 5, 2014 by placing it in inmate mail outside of his Segregation Unit cell ("November 2014 grievance"). During counselor rounds of the segregation unit at Dixon in December 2014, he had asked a counselor about the status of the November 2014 grievance and was told they would let him know when it was reviewed and addressed. Dkt. No. 146-1 at 31.

Plaintiff was transferred from Dixon to Pontiac on January 7, 2015. In January 2015, plaintiff asked his counselor at Pontiac about the status of the November 2015 grievance and was told he would receive a response when a response was given. Dkt. No. 146-1 at 26. Having heard no response from his counselor for over two months, plaintiff sent a letter and copy of the November 2014 grievance to the Administrative Review Board ("ARB") in January 2015, which was denied for untimeliness on February 11, 2015. He then filed this lawsuit on March 17, 2015.

Plaintiff filed a second grievance with his counselor while at Pontiac on December 26, 2017 ("December 2017 grievance") to follow up with November 2014 grievance and asked a counselor about the status of his first grievance. On January 3, 2018, he was informed that "Dixon's grievance office was contacted and they do not have a record of a grievance from 11/5/14. [Dixon's office] stated that their current logs do not go back that far." Dkt. No. 139 Ex. 5. The December 2017 grievance was returned to the plaintiff who was told it had to be filed directly with the ARB. Dkt. No. 139 Ex. 6. The December 2017 grievance was ultimately denied by the ARB for untimeliness on January 16, 2018. The ARB noted they had addressed plaintiff's issue on February 11, 2015 (when they denied the November 2014 grievance for untimeliness) and that plaintiff had not provided justification for additional consideration. Dkt. No. 139 Ex. 7.

## II. ANALYSIS

The Prison Litigation Reform Act ("PLRA"), requires prisoners to exhaust all administrative remedies available to them before they may have their claims heard in a federal court. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7thCir. 2008). To exhaust administrative remedies, a prisoner must comply with the procedures and deadlines set forth in the prison's policy. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Exhaustion is a precondition to filing suit in federal court, thus an inmate may not exhaust his administrative remedies after filing. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). The exhaustion requirement is meant to put prison officials on reasonable notice of a prisoner's problem and allow them an opportunity to address it before the filing of a lawsuit. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

The Seventh Circuit employs a strict compliance approach to the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, where administrative processes are rendered inaccessible solely due to the "missteps of the prison system," a prisoner will have exhausted his administrative remedies. *Id.* at 809. Administrative remedies become unavailable when prison authorities do not respond to a properly filed grievance. *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). In these cases, "the prisoner is considered to have exhausted his administrative remedies." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). The defendants bear the burden of proving plaintiff failed to exhaust his administrative remedies. *Turley*, 729 F.3d at 645, 650.

The applicable administrative remedies available to Illinois inmates are found in 20 Ill. Admin. Code § 504.800–870 which require prisoners follow a three-step process to exhaust their administrative remedies: (1) informally attempt to resolve the grievance with a prison Counselor, (2) formally file the grievance with the prison's Grievance Officer within 60 days of the incident giving rise to the complaint, and (3) if the prisoner is not satisfied with the Grievance Officer's response, to file an appeal to the ARB within 30 days of the date of the Grievance Officer's decision. 20 Ill. Admin. Code §§ 504.810, 830, 850. The grievance must contain as much factual detail as possible regarding the incident, including relevant names, dates, and locations. However, where names are not known, "the offender must include as much descriptive information as possible." Ill. Admin. Code § 504.810. When an inmate does all the prison regulations require but does not receive a response, his administrative remedies are exhausted. *Dole*, 438 F.3d at 811; *Brengettcy*, 423 F.3d at 682; *Lewis*, 300 F.3d at 833.

Defendants argue plaintiff failed to exhaust because his November 2014 grievance was procedurally deficient as it was sent to the ARB before being reviewed by a Grievance Officer. But at the Pavey hearing, plaintiff testified that he was unable to complete the three-step process. According to the plaintiff, he had submitted the November 2014 grievance to his counselor by placing it in the inmate mail process, but his counselor never returned it. He explained that he was never able to send his grievance to his Grievance Officer because to do so he first needed it back from his counselor, but he never received it. Dkt. No. 146–1 at 27. He also testified that he was familiar with the requirement that he get his grievance back from his counselor before submitting it to the Grievance Officer because he had received an inmate handbook describing the grievance process when he was first incarcerated in 2012 and had successfully grieved issues

with the prison in the past. Finally, two and a half months later while at Pontiac, plaintiff sent a letter with a copy of the November 2014 grievance directly to the ARB, as per administrative procedure, which the ARB denied. 20 Ill. Admin. Code § 504.870(a)(3) (issues pertaining to a facility other than the one where the prisoner is assigned are to be addressed directly to the ARB).

A prisoner faced similar circumstances in *Dole*, 438 F.3d at 807, where a prisoner sent a written grievance to the ARB through the prison mail system and never received a response. The court in *Dole* stated that this sufficed to exhaust his administrative remedies because the fault of mishandling the grievance lay entirely with the prison system and the prisoner had done all that the administrative rules required of him. *Id*. at 811. Although the defendants here have offered records to show that no counselor at Dixon ever received plaintiff's November 2014 grievance, the Court finds the plaintiff's testimony that he placed his November 2014 grievance in the inmate mail process to be credible. Moreover, his testimony is not inconsistent with the defendants' evidence that the November 2014 grievance was never received by his counselor at Dixon because the grievance could have been lost or not delivered for reasons other than plaintiff's failure to submit it.

Plaintiff testified that he had sent his November 2014 grievance to his counselor in the only way available to him – through the inmate mail system. Dkt. No. 146-1 at 29–30. He also testified that he asked a counselor while still in Dixon for an update on that grievance and was told he would receive an answer once it was addressed. There is no evidence that he was informed the grievance had not been received. He ultimately never received a response to this grievance and was unable to follow up again with this counselor as he was soon transferred to Pontiac. On balance, the evidence shows that plaintiff sent his November 2014 grievance through the prison mail system to his counselor as required, though for whatever reason it never reached his counselor. *See Pyles*, 829 F.3d at 869.

In January 2015 the plaintiff asked his counselor at Pontiac about the status of his November 2014 grievance and was told he would be informed when a response was given. Again, there was no evidence that he was informed the grievance had not been received. Additionally, when plaintiff's counselor at Pontiac later inquired about the status of the November 2014 grievance in December 2017, he was told by Dixon's office that "their current logs do not go back that far." Dkt. No. 139 Ex. 5. Thus, there may have been a record of receipt of the November 2014 grievance which was not kept, or the grievance filed may have been lost in the hands of the prison mail system. Either way, the plaintiff never received a response. The prison regulations in this case required plaintiff to file a grievance with his counselor, follow up on it, and await a response from the counselor before forwarding it to the prison's Grievance Officer. 20 Ill. Admin. Code §§ 504.810, 830, 850. The evidence shows plaintiff completed these steps, yet never received a response from his counselor to file with the Grievance Officer. Therefore, plaintiff exhausted his administrative remedies. *Dole*, 438 F.3d at 811; *Brengettcy*, 423 F.3d at 682; *Lewis*, 300 F.3d at 833. Defendants have not met their burden to prove that plaintiff's November 2014 grievance was procedurally deficient.

Defendants also argue plaintiff failed to exhaust his administrative remedies because his grievances fail to name or otherwise sufficiently identify any of the defendants. However, the

4

exact names of the defendants are not required to satisfy Illinois administrative rules; instead, "when the names of individuals are not known . . . the offender must include as much descriptive information about the individual as possible." Ill. Admin. Code § 504.510(c). The purpose of this requirement is to put prison officials on notice of an issue at the prison; failure to include named defendants in a grievance is "a mere technical defect" where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond. *Kyles v. Beaugard*, No. 15 CV 8895, 2017 U.S. Dist. LEXIS 150764, at *27 (N.D. Ill. Sept. 18, 2017) (quoting *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011)); *see also Jordan v. Stahr*, No. 11 CV 2362, 2015 U.S. Dist. LEXIS 30202, at *16–18 (N.D. Ill. Mar. 11, 2015); *Charles v. Shaw*, No. 10 CV 4069, 2011 U.S. Dist. LEXIS 71728, at *11–13 (N.D. Ill. July 5, 2011).

In this case, although plaintiff did not identify any defendants by name in his November 2014 grievance, he provided enough information to notify prison officials at Dixon of his basic objections to his treatment and allow them to respond. Plaintiff's grievance described his allegedly indifferent treatment at the hands of the "Administration here at Dixon." Dkt. No. 137 Ex. F. The grievance detailed dates, times, and places relevant to plaintiff's concerns with his treatment, with emphasis on how he was treated while "on watch" after he attempted suicide on October 8. *Id.* He described being put in segregation on October 19 and attempting suicide, being brought to the KSB hospital in Dixon, being placed in a suicide watch cell upon his return, and being questioned on a daily basis by "different mental health staff members" for 18 days. *Id*. He also described receiving 4 disciplinary reports while "on watch" for the 18-day period. He summed up his grievance by stating "I believe that 'mental health' went too far and used the 'harshness' of the 'watch' as punishment for my suicide attempt." *Id.* This information was sufficient to put Dixon officials on notice that plaintiff was concerned about how the "mental health" staff and officials were disregarding his mental state while placing him "on watch" during that time. *See Kyles*, 2017 U.S. Dist. LEXIS 150764, at *11–12; *Fleming v. Ill. Dep't of Corr.*, No. 16 CV 50074, 2017 U.S. Dist. LEXIS 69606 (N.D. Ill. May 8, 2017). Armed with this information, IDOC and Wexford can readily identify the employees involved.

However, the same cannot be said for Defendant Pfister. Unlike the other named defendants who were working in or overseeing the Dixon mental health facilities beginning in October 2014, Pfister was employed by the Pontiac facility at the time. The November 2014 grievance describes plaintiff's issues with his treatment at the Dixon facility, where the alleged mistreatment occurred. There is nothing in the November 2014 grievance that would put officials in Pontiac on notice that there were possible issues that they could correct at their facility. The November 2014 grievance described plaintiff's grievances as to Dixon prison officials, staff, and policy. *See* Dkt. No. 137 Ex. F at 1–4. Plaintiff was transferred to Pontiac on January 7, 2015, two and a half months after the filing of the November 2014 grievance. Though plaintiff alleges in his complaint that defendant Pfister treated him like the other defendants had, Second Am. Compl. Dkt. No. 52 at ¶¶ 50–60, his November 2014 grievance does not raise any issues with respect to any Pontiac policy, treatment, or staff member.

Although a prisoner need not file a new grievance for each incident of misconduct involving the same issue, "[s]eparate complaints about particular incidents are [ ] required if the underlying facts or the complaints are different." *Turley*, 729 F.3d at 650; *Bruce v. Ghosh*, No. 11 CV 3138, 2015 U.S. Dist. LEXIS 47941, at *18–19 (N.D. Ill. April 13, 2015). The

5

differentiating underlying fact in this case is the location of the events giving rise to the grievance: the November 2014 grievance related to conduct at Dixon, and any allegations regarding similar conduct at Pontiac are not captured by this grievance. Although plaintiff did file a second grievance while at Pontiac in December 2017, this grievance sought an update regarding the original November 2014 grievance and contained no allegations about prison officials or treatment at Pontiac. *See* Dkt. No. 137 Ex. F at 12. Therefore, because there are no grievances that put officials at Pontiac on notice of issues with an opportunity to address them, *Turley*, 729 F.3d at 650, the claim against Defendant Pfister has not been exhausted and should be dismissed without prejudice.

### III. CONCLUSION

For the reasons above, the Court finds that the plaintiff did not exhaust his administrative remedies as to Defendant Pfister; however, the plaintiff did exhaust his administrative remedies as to the remaining defendants. It is this Court's Report and Recommendation that plaintiff's claims against Defendant Pfister be dismissed without prejudice and all claims against the remaining defendants be allowed to proceed.

Any objection to this Report and Recommendation shall be filed by October 29, 2018. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

October 15, 2018

_____
Iain D. Johnston
U.S. Magistrate Judge