UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| SAMUEL SPAN, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 15 CV 50063 |
| v. | ) | Magistrate Judge Iain D. Johnston |
| | ) | |
| DONALD ENLOE, *et al.*, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Current and former clinical psychologists at the Dixon Correctional Center have moved to bar the plaintiff from eliciting testimony in this case from Dr. Pablo Stewart, who is serving as a court-appointed monitor in a different case. For the reasons that follow, the motion to bar is denied without prejudice.

## BACKGROUND

Plaintiff Samuel Span is an inmate at Dixon. He alleges that he is seriously mentally ill, and that the defendants have failed to meet his housing and treatment needs in violation of the Eighth and Fourteenth Amendments, as well as the Americans with Disabilities Act. In addition to alleging those claims in this case, Mr. Span is a member of a class of plaintiffs in an earlier ongoing lawsuit, *Rasho v. Baldwin*, Case No. 07 CV 1298, pending in the Central District of Illinois. The *Rasho* class consists of inmates at multiple Illinois Department of Corrections facilities alleging similar claims against a different group of defendants.

In this case, Mr. Span's counsel included in his Fed. R. Civ. P. 26(a)(2)(C) disclosures the name of Dr. Pablo Stewart, who is serving as a court-appointed monitor in the *Rasho* case. The plaintiff disclosed that Dr. Stewart's anticipated testimony would include that "the Illinois Department of Corrections did not employ an adequate number of psychiatrists to provide adequate care and monitoring; that the mental health conditions affect behavior and discipline; that housing seriously mentally ill inmates in segregation prevents adequate care and results in deterioration of mental health; and that housing in segregation and crisis cells are linked to the fact that seriously mentally ill inmates are not receiving adequate mental health care." Motion [Dkt. 231], Ex. A.

The defendant psychologists, Jamie Chess, Lisa Schoenberger, Sheila Stone, and Patricia Vickroy (whose interests are now represented by her estate), are or were employed by non-defendant Wexford Health Sources, Inc. For convenience the Court will refer to them as the Wexford defendants. The Wexford defendants argue that a settlement agreement reached in the *Rasho* case, under which Dr. Stewart was named the court-appointed monitor, "limits his ability to disclose information obtained from the IDOC in his role as a court-appointed monitor." *Id.* at 3. As a result, the Wexford defendants contend that "Dr. Stewart is shielded from testifying in

this case or, at the very least, that there may be matters the parties cannot discuss with Dr. Stewart and his bases for his opinions, thereby hindering the parties' ability to adequately cross-examine his opinions, if any." *Id.* As a result, the defendants contend that the Court should bar the plaintiff's attempt to use Dr. Stewart as an opinion witness because the defendants would be unable to avail themselves of their right under Federal Rule of Evidence 705 to cross-examine Dr. Stewart about his opinions. In support, the Wexford defendants rely on the following excerpt from the *Rasho* settlement agreement:

> h) Reports, documents, data, and other information provided by JDOC [sic] to the Monitor will also be available to Plaintiff's counsel on a confidential basis and for use in this matter only.
>
> i) A review of records by the Monitor or his staff shall not constitute a waiver of IDOC's quality assurance privilege. Moreover, any such disclosures shall not constitute a waiver or serve as precedent in other legal proceedings with respect to the aforementioned quality assurance privilege. In addition, Plaintiffs and the Monitor and his staff agree to keep said documentation confidential, if the documentation is confidential, and not to disclose, publish or use for public consumption any of the records reviewed by Plaintiffs, the Monitor or his staff.
>
> j) In addition to the quality assurance privileges described above, other records or information the disclosure of which is objected to by either party based upon a claim of privilege, confidentiality, or relevance to the implementation of the Settlement Agreement shall not be disclosed by the Monitor to the other party or to the public. . . .

Settlement Agreement [Dkt. 231 Ex. B] Sec. XXVII, at 21-22.

In addition, the Wexford defendants argue that the Court should also bar the plaintiffs from attempting to depose Dr. Stewart under Federal Rule of Evidence 611(a) because it would amount to (1) harassment because the terms of the settlement agreement prohibit him from testifying; and (2) a waste of time because Mr. Span's claims are being litigated both in this case and in *Rasho*, in which he is a member of the class alleging similar claims, raising "serious *res judicata*" concerns. Motion [Dkt. 231] at 5.

The plaintiff responds that the Wexford defendants' arguments are premature because Dr. Stewart has not yet asserted that he cannot testify under the terms of his appointment. The plaintiff further argues that the Wexford defendants lack standing to object on Dr. Stewart's behalf. Finally, the plaintiff contends that concerns over *res judicata* do not apply because there has been no final judgment on the merits in the *Rasho* case, which is ongoing.

## ANALYSIS

Under Fed. R. Evid. 705 an expert "may state an opinion – and give the reasons for it," and may be required to "testify[] to the underlying facts or data . . . on cross-examination." The Wexford defendants contend that they will be unable to determine the fact or data underlying Dr. Stewart's opinions because he obtained that information from IDOC in his role as a court-appointed monitor, and under the terms of his appointment he is prohibited from disclosing that information.

To begin, this Court is hesitant to construe the terms under which Dr. Stewart is serving as a monitor. Although the parties have referred to him as a "court-appointed monitor," the language from the settlement agreement quoted never refers to Fed. R. Evid. 706, under which courts can appoint experts. In fact, according to the settlement agreement, Dr. Stewart was hired by the parties, not the court. Settlement Agreement XXVII(a) [Dkt. 231, Ex. B] ("The parties have agreed to hire Doctor Pablo Stewart as the monitor."). As a result, it is not entirely clear that this Court has before it all of the terms that govern Dr. Stewart's role as a monitor in *Rasho*.

However, based on the language the parties have presented to this Court, and solely for the purposes of resolving the Wexford defendants' motion, it does not appear that Dr. Stewart is necessarily precluded entirely from disclosing information IDOC provided to him. Under Section XXVII(i) of the Settlement Agreement Dr. Stewart is to "keep said documentation confidential, *if the documentation is confidential*." Settlement Agreement XXVII(i) [Dkt. 231, Ex. B] (emphasis added). Similarly under Section XXVII(j), Dr. Stewart is not to disclose "records or information the disclosure of which *is objected to by either party*." *Id.* XXVII(j) (emphasis added). Although section (i) goes on to direct the monitor to not "disclose, publish or use for public consumption any of the records reviewed by Plaintiffs, the Monitor or his staff," that language follows the language "if the documentation is confidential." The agreement therefore seems to prohibit only the disclosure of confidential records, lest the phrases "if the documentation is confidential" in section (i), and "the disclosure of which is objected to by either party" would be superfluous.

The Wexford defendants have not identified who or how records are designated as being confidential as used in Section XXVII(i), nor have they identified any objections by any of the parties in *Rasho* to Dr. Stewart disclosing IDOC documents in this case. This is not to say documents the parties to this case seek from Dr. Stewart are not confidential, or parties to the *Rasho* case will not object. Both of those could come to be, but the Court has been presented with nothing from which to conclude that either has occurred yet.

The Wexford defendants also rely on Section XXVII(h), but that governs the receipt of IDOC documents by the plaintiffs in *Rasho*, and so would not appear to govern Dr. Stewart's use of those documents. The Wexford defendants also refer to IDOC's quality assurance privilege, there's no contention that IDOC has asserted its privilege.

The defendants also argue that under Fed. R. Evid. 611(a) this Court should bar Dr. Stewart as an exercise of "reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) [m]ake those procedures effective for determining the

truth; (2) [a]void wasting time; and (3) [p]rotect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). The defendants contend that because Dr. Stewart is prohibited from testifying, attempting to obtain his testimony would amount to harassment. But, as discussed above, the defendants have not established that Dr. Stewart would be prohibited under all circumstances from testifying or disclosing the information he obtained from IDOC. If Dr. Stewart is able to testify, attempts to seek his testimony would not be harassing. As for the waste of time argument based on *res judicata*, in their reply brief the defendants state they "are not specifically relying on *res judicata* at this juncture," but instead are just "raising serious *res judicata* concerns" over the plaintiff litigating two claims in different lawsuits. Reply Brief [Dkt. 240] at 2-3. In the absence of a developed argument based on *res judicata* or any other doctrine governing raising similar claims in multiple venues, the Court will not address this concern further.

Finally, in support of their argument that Dr. Stewart cannot testify in this Court about the bases for the opinions reached as a court-appointed monitor in *Rasho*, the Wexford defendants rely on the decision in *Lippert v. Godinez*, Case No. 10 CV 4603 (N.D. Ill. Mar. 9, 2018). In *Lippert*, an inmate filed a motion to intervene in that case and seek to modify the terms of the agreement under which a doctor agreed to serve as a court-appointed monitor. *Id.* at 3. The inmate wanted to depose the doctor in his own unrelated suit, but the Fed. R. Evid. 706 Order setting out the terms of the appointment prohibited the doctor from offering opinions or testimony in unrelated cases based on what he had learned as monitor in that case. *Id.* The *Lippert* court held that the inmate could intervene, but it would not modify the terms of the agreement with the doctor because the doctor had stated that he never would have accepted the appointment if the Rule 706 Order had not protected him against having to testify in other cases. *Id.* at 7-11.

In this case, Dr. Stewart has not expressed his views on testifying in other cases, and the Wexford defendants have not directed the Court to language in the *Rasho* settlement agreement similar to the scope of duties language the court relied on in *Lippert* that prohibited the doctor from testifying in other cases. Therefore, the defendants have failed to establish that *Lippert* compels an order barring the plaintiff from seeking testimony from Dr. Stewart.

## CONCLUSION

For the reasons given, the Wexford defendants' motion to bar the testimony of Dr. Stewart is denied, though without prejudice. The Court may revisit the issue upon request if events warrant, for instance if Dr. Stewart seeks a protective order under Fed. R. Civ. P. 45(d), or if IDOC objects under the terms of the *Rasho* settlement agreement.

Date: September 28, 2020    By: _____
                               Iain D. Johnston
                               United States Magistrate Judge